NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3410
_____

MARK ANTHONY ROBINSON,

Appellant
v.

JOHN E. WETZEL, Secretary, DOC;
DORINA VARNER, Chief Grievance Officer
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 11-cv-01269)
District Judge: Honorable Robert D. Mariani
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6
March 24, 2016

Before:  CHAGARES, GREENAWAY, JR. and [1]SLOVITER, Circuit Judges

(Opinion filed:  May 3, 2016)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

_____

[1] The Honorable Dolores K. Sloviter participated in the decision in this case.  Judge Sloviter
assumed inactive status on April 4, 2016 after the submission date, but before the filing of the
opinion.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third
Circuit I.O.P. Chapter 12.

PER CURIAM

Mark Anthony Robinson appeals from an order of the District Court granting summary judgment to the defendants. For the reasons that follow, we will summarily affirm.

Robinson filed an in forma pauperis civil rights action in the United States District Court for the Middle District of Pennsylvania against Department of Corrections ("DOC") Secretary John Wetzel and Chief Grievance Officer Dorina Varner. Robinson, a Level 5 inmate (Level 5 involves the highest level of security and control), alleged that the DOC's policies restricting Level 5 inmates' access to religious materials were "clear RLUIPA [Religious Land Use and Institutionalized Persons Act] and other U.S. and Pennsylvania constitutional violations." Complaint, at 1. Robinson, a Christian, alleged that he could not receive communion regularly and that his ability to receive written religious materials was "spotty." Id. at 2. Robinson sought damages and injunctive relief. He moved for class certification, appointment of counsel, and preliminary injunctive relief. Those motions were denied by the District Court.

The defendants moved to dismiss the complaint, Fed. R. Civ. P. 12(b)(6), arguing, in pertinent part, that Robinson had failed to exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a). The defendants acknowledged that Robinson had pursued two grievances while incarcerated at the State Correctional Institution in Bellefonte ("SCI-Rockview") – Grievance Nos. 358669 & 359361 – but argued that the exhaustion process was not complete without a final written appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). SOIGA received a

2

letter from Robinson titled "Declaration," which it construed as an appeal of Grievance Nos. 359361 and 358669, but it had issued a Final Appeal Decision dismissing those grievances because Robinson had failed to provide the required documentation for proper review, namely, copies of his grievances and the Initial Review Responses as required by DC-ADM 804.[1]

The District Court converted the defendants' motion to one for summary judgment and set a deadline for Robinson to respond. Briefing on this motion ensued, and following briefing, the Magistrate Judge filed a Report and Recommendation, recommending that the defendants' motion be granted. The Magistrate Judge concluded, in pertinent part, that Robinson had failed to rebut the defendants' carefully documented assertion that he had failed to fully exhaust his administrative remedies. Robinson sought and received an extension of time to file Objections, but then he filed a motion for leave to amend, and a proposed amended complaint. The Magistrate Judge granted leave to amend, deemed the proposed amended complaint filed, and denied the defendants' motion to dismiss as moot. The District Court then rejected as moot the Magistrate Judge's Report and Recommendation in light of Robinson's decision to amend his complaint.

---

[1] In Grievance No. 358669, Robinson complained that while in the Restricted Housing Unit ("RHU") he was prohibited from practicing his religion, specifically that he was not able to attend church services, Bible studies, or other Christian activities or events. Robinson sought as relief an order directing that SCI-Rockview provide inmates within the RHU access to closed-circuit video of church services and Bible studies, among other things. In Grievance No. 359361, Robinson alleged that he was prohibited from ordering and receiving religious books with money from his inmate account, among other things.

In his amended complaint, Robinson alleged that the defendants violated his First and Fourteenth Amendment rights by enforcing policies which had the effect of interfering with his right to practice his Christian religion. Robinson asserted that, while in Level 5 custody at SCI-Rockview, he had made "repeated and consistent" requests "to Rockview's Superintendent" to be allowed to "view by close[d]-circuit television: church services, lessons, Bible studies and other religious programming," Amended Complaint, at ¶15, and been told that he could not do so because of DOC policy. He further provided an explanation for his failure to include the proper documentation in support of his appeals to SOIGA and argued that his procedural default of his administrative remedies should be excused, id. at ¶¶ 17-33. Last, he asserted that he had made the same continuous requests to view religious programming on closed-circuit television in the RHU at his new facility, SCI-Camp Hill, id. at ¶ 34-41, but those requests had been denied, again on the basis of DOC policy.

The defendants moved to dismiss the amended complaint. Again the defendants argued that Robinson had failed to fully exhaust his administrative remedies with respect to his SCI-Rockview grievances, and thus his amended complaint should be dismissed to the extent of those grievances. The defendants also noted that Robinson had been transferred to the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), and that he had submitted Grievance No. 389422 within that institution's grievance system.[2] The

---

[2] In Grievance No. 389422, Robinson complained that a Protestant Chaplain was not making weekly rounds; that he did not have access to Christian literature; that he was not receiving communion; and that he should be permitted to view religious services via video monitor. In denying the grievance, the Reverend O. Larry Mills said that a

4

defendants did not contest that Robinson had appealed his administrative remedies with respect to Grievance No. 389422 to the highest level, but argued that the amended complaint should nevertheless be dismissed as to Secretary Wetzel for failure to exhaust because Robinson failed to identify Wetzel as an individual directly involved in the events, as required by DC-ADM 804(1)(A)(11). The defendants did not contest the exhaustion issue with respect to Varner; instead, they argued that she had no personal involvement in the alleged denial of access to religious services. They argued that her participation in an "after-the-fact" review of the denial of Robinson's grievance was not enough to deem her personally involved in the alleged constitutional violation under Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d. Cir. 1988).

After Robinson submitted his opposition to the defendants' motion to dismiss his amended complaint, the Magistrate Judge filed another Report and Recommendation, this time recommending that the motion be granted in part and denied in part. The Magistrate Judge credited Robinson's argument, for purposes of summary judgment, that he should not be faulted for having taken a final-level appeal of two of his grievances without the required documentation, and rejected the defendants' argument that Robinson had failed to properly exhaust remedies with respect to his most recent grievance by neglecting to

chaplain was indeed making the required weekly rounds to the Special Management Unit; that chaplains do indeed bring materials to the block when requested; that communion is available and that Robinson need only request it; and that, with respect to video broadcasts, the least restrictive means to accommodate Robinson's faith was through publications, which Robinson could purchase in accordance with DOC policy. On appeal, Chief Grievance Officer Varner concluded that Robinson's grievance was frivolous, in part because there was no evidence that he had actually ever requested any religious materials.

5

specifically identify Wetzel as the individual directly involved. The Magistrate Judge recommended that the case proceed as to defendant Wetzel, but agreed with the defendants that defendant Varner's action in dismissing Robinson's grievance appeal was insufficient to show direct involvement in any First Amendment violation. In an order filed on January 15, 2014, the District Court dismissed the amended complaint as to Varner and denied it as to Wetzel. Discovery ensued.

Following discovery, both Robinson and Wetzel moved for summary judgment, Fed. R. Civ. P. 56(a), each contending that he was entitled to judgment as a matter of law. Defendant Wetzel noted in his summary judgment motion that Robinson was now incarcerated in the Restricted Housing Unit at the State Correctional Institution in Waynesburg, Pennsylvania ("SCI-Greene"). The Magistrate Judge recommended that Robinson's motion be denied, and the District Court denied it on March 30, 2015. The Magistrate Judge then recommended that Wetzel's summary judgment motion be granted. Drawing on information gleaned from another of Robinson's civil rights actions, Robinson v. Wetzel, D.C. Civ. No. 11-cv-02194, the Magistrate Judge described Robinson's institutional behavior as "incorrigible" and "antisocial." The Magistrate Judge noted that, for inmates in Level 5 custody, in-cell television is a privilege that can be denied or revoked based on that inmate's conduct, which in Robinson's case was not good. The Magistrate Judge also described televisions as "potential weapons," and noted that, in another of Robinson's cases, Robinson v. Tennis, D.C. Civ. No. 10-cv-00272, he (the Magistrate Judge) had found that Robinson was videotaped refusing to return to A-Block; in the videotape Robinson could clearly be seen tying the electrical cord of a

6

television set around his neck and threatening to harm himself and throw the television. The Magistrate Judge noted that Robinson owned a television but was not permitted to have it in his cell due to his poor conduct.

With respect to Robinson's specific First Amendment allegations, the Magistrate Judge concluded that the DOC's regulations regarding television for Level 5 inmates was valid because it was reasonably related to legitimate penological interests, citing Pell v. Procunier, 417 U.S. 817, 822 (1974); and Turner v. Safley, 482 U.S. 78, 89 (1987). In Robinson's case in particular, he had not earned the privilege of watching television, and his disciplinary history actually showed his ability to use a television as a weapon. Moreover, Robinson had alternative means of exercising his First Amendment right to practice his Christian religion. Specifically, the summary judgment record showed that, although inmates housed in Level 5 housing units are not permitted to attend religious services and programs that take place within the general population, religious services and programs for inmates housed in level 5 tale place in the inmate's cell through visits from staff chaplains. Those chaplains may provide Level 5 inmates with religious materials. Inmates in Level 5 housing may pray in their cells, and they may also designate a Religious Advisor, and then are permitted to correspond with and receive visits from that person. Inmates may also submit a Religious Accommodation Request Form regarding any religious need, and it will be given consideration by the institution. The Magistrate Judge noted that Robinson had never submitted an Inmate Religious Accommodation Request Form regarding any religious issue while incarcerated at SCI-Rockview, SCI-Camp Hill, or SCI-Greene.

7

Robinson submitted Objections to the Report and Recommendation. He argued that the Magistrate Judge had misconstrued his claim as a demand for a television in his cell; that the Magistrate Judge had not taken into account that at his new facility, SCI-Greene, there are televisions on each pod in the RHU but officials there "refuse to make religious service the viewing priority;" and that the Magistrate Judge's comments concerning his conduct and criminal history were inflammatory, irrelevant, and/or inaccurate. In an order entered on September 21, 2016, the District Court adopted the Report and Recommendation, concluding that, on the undisputed facts of the case, the Magistrate Judge had correctly applied Turner's four-factor analysis to Robinson's First Amendment claim. Robinson's objections were overruled and summary judgment was granted to defendant Wetzel.

Robinson appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary action under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, and in his written submission in support of his appeal, Robinson makes the same arguments he made in his Objections to the Magistrate Judge's Report and Recommendation, including his argument that the DOC has installed televisions inside of each RHU pod at SCI-Greene. Robinson has also filed a motion for appointment of counsel.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. Summary judgment is proper where there is no genuine issue of material fact to be resolved and the

8

moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under 42 U.S.C. § 1983, a plaintiff must demonstrate that each defendant was personally involved in the alleged wrongdoing. Rode, 845 F.2d at 1207. See also Rizzo v. Goode, 423 U.S. 362, 375-77 (1976); Chincello v. Fenton, 805 F.2d 126, 133-34 (3d Cir. 1986). Robinson's amended complaint fails to allege any action that would be adequate to demonstrate personal involvement on the part of Varner. Although the amended complaint alleges that Varner responded inappropriately in reviewing on appeal his grievance that he had been denied the right to practice his religion, this allegation does not establish Varner's direct involvement in the denial of Robinson's request to view religious services on closed circuit television.

Turning to Robinson's First Amendment claim against defendant Wetzel, we note that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell, 417 U.S. at 822. To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in Turner. These factors require courts to consider: (1) whether the regulation bears a valid, rational connection to a legitimate and neutral government objective; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation

9

of prison resources generally; and (4) the absence of ready alternatives. Id. at 89-90 (citations omitted). See also Fraise v. Terhune, 283 F.3d 506, 513-14 (3d Cir. 2002).

We have carefully reviewed the summary judgment record and are satisfied that the Turner factors were properly applied to the claims Robinson exhausted through the prison grievance process. The defendants established through their summary judgment motion that defendant Wetzel has not substantially burdened the exercise of Robinson's religion by refusing to allow him access to religious television programming while in Level 5 housing. Defendant Wetzel asserted in his summary judgment motion that videotaping of religious services for major faith groups takes place at SCI-Camp Hill and SCI-Greene. These services are broadcast on the institutional channel, and inmates in the general population at these institutions are permitted to view these services on their televisions. Although inmates in Level 5 housing are not similarly accommodated, they receive visits from staff chaplains, they may receive communion, they may keep written religious materials in their cells, they may correspond with and receive visits from religious advisors within the community, and they have an avenue for seeking additional accommodations. The Turner analysis does not focus on whether the inmate has alternative means of engaging in a particular practice; rather, it focuses on whether he has alternative means of observing his religion generally. See O'Lone, 482 U.S. at 351-52. Accordingly, summary judgment in favor of defendant Wetzel on Robinson's First Amendment claim was proper.

We emphasize that our decision to summarily affirm is necessarily limited. Robinson pursued only a First Amendment claim in his amended complaint.

10

In addition, only the issues Robinson exhausted through the grievances filed at SCI-Rockview and SCI-Camp Hill are at issue here. In his response in opposition to the defendants' motion for summary judgment, see Docket Entry Nos. 127 & 130; Objections to the Magistrate Judge's Report and Recommendation; and written argument on appeal, Robinson alleged that officials at SCI-Greene had recently installed television monitors in the Restricted Housing Unit blocks and pods. He appears to argue that, therefore, allowing Level 5 inmates to view religious programming on these already-installed monitors would permit Christian inmates to practice their religion without at the same time unduly inconveniencing other inmates or causing security concerns. If conditions are significantly different at SCI-Greene, as Robinson appears to allege, he is not precluded by our affirmance from submitting an accommodation request and/or grievance at that institution regarding his expressed need to view religious programming.

For the foregoing reasons, we will summarily affirm the orders of the District Court granting summary judgment to the defendants. The motion for appointment of counsel is denied as moot.